**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DEBORAH MARIGNY, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>MICHAEL J. ASTRUE, §<br>COMMISSIONER of the §<br>SOCIAL SECURITY §<br>ADMINISTRATION, §<br>§<br>Defendant. § | CIVIL ACTION NO. 4:09-1776 |

**MEMORANDUM AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter was referred by United States District Judge Lee H. Rosenthal, for full

pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #3).

Cross-motions for summary judgment have been filed by Plaintiff Deborah Marigny

("Plaintiff," "Marigny"), and by Defendant Michael J. Astrue, ("Defendant,"

"Commissioner"), in his capacity as Commissioner of the Social Security Administration

("SSA"). (Defendant's Cross-Motion for Summary Judgment, Docket Entry #11;

Defendant's Memorandum in Support of Cross-Motion for Summary Judgment

["Defendant's Motion"], Docket Entry #12; Plaintiff's Motion for Summary Judgment

["Plaintiff's Motion"], Docket Entry #13). Defendant has filed a response to Plaintiff's

motion, and Plaintiff has replied. (Defendant's Response to Plaintiff's Motion for

Summary Judgment ["Defendant's Response"], Docket Entry #14; Plaintiff's Reply to

Defendant's Response to Plaintiff's Motion for Summary Judgment ["Plaintiff's Reply"],

Docket Entry #15). After a review of the pleadings, the evidence presented, and the applicable law, it is **RECOMMENDED** that Plaintiff's motion be **GRANTED**, and that Defendant's motion be **DENIED.**

**BACKGROUND**

On November 16, 2005, Plaintiff Deborah Marigny filed an application for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and Title XVI of the Social Security Act ("the Act").[1] (Transcript ["Tr."] 92-100, Docket Entry #10). In her application, Plaintiff claimed that she had been unable to work, since August 28, 2005, because of "[n]arrowing of the spine, protruding discs, pain in back and leg, [and] panic attacks." (Tr. 92, 105). The SSA denied Plaintiff's application on March 20, 2006, finding that she was not disabled under the Act. (Tr. 79). On April 17, 2006, Plaintiff filed a request for a reconsideration of that decision. (Tr. 85). On June 30, 2006, the SSA reopened her case, but again denied her benefits. (Tr. 86).

On July 12, 2006, Plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. 91). That hearing, before ALJ Joan E. Parks Saunders, took place on April 24, 2008. (Tr. 10). Plaintiff appeared with her attorney, indentified only as "Mr. Menindez," and she testified on her own behalf. (Tr. 37). The ALJ also heard testimony from a vocational expert witness, Herman Litt ("Mr. Litt"). (Tr. 10). No medical expert witness testified at the hearing. (*Id.*).

---

[1] Social Security Disability Insurance Benefits are based on the length of time a disabled claimant paid social security pay-roll taxes prior to his disability. 42 U.S.C. § 416. Supplemental Security Income benefits are based on a disabled claimant's financial need. 42 U.S.C. § 1381.

Following the hearing, the ALJ engaged in the following five-step, sequential analysis to determine whether Plaintiff was capable of performing substantial gainful activity or was, in fact, disabled:

1.   An individual who is working or engaging in substantial gainful activity will not be found disabled regardless of the medical findings. 20 C.F.R. §§ 404.1520(b) and 416.920(b).

2.   An individual who does not have a "severe impairment" will not be found to be disabled.  20 C.F.R. §§ 404.1520(c) and 416.920(c).

3.   An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will not be considered disabled without consideration of vocational factors. 20 C.F.R. §§ 404.1520(d) and 416.920(d).

4.   If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

5.   If an individual's impairment precludes performance of his past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173–74 (5th Cir. 1995); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  It is well-settled that, under this analysis, Marigny has the burden to prove any disability that is relevant to the first four steps.  *See Wren*, 925 F.2d at 125.  If she is successful, the burden then shifts to the Commissioner, at step five, to show that she is able to perform other work that exists in the national economy.  *See Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Wren*, 925 F.2d at 125.  "A finding that a claimant is disabled or is not disabled

at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

It must be emphasized that the mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)). An individual claiming disability insurance benefits under the Act has the burden to prove that she suffers from a disability. *See Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Under the Act, a claimant is deemed disabled only if she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). Substantial gainful activity is defined as "work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452. A physical or mental impairment is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (citing 42 U.S.C. § 423(d)(3)). Further, the impairment must be so severe as to limit the claimant so that "[s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any kind of substantial gainful work which exists in the national economy." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. § 423(d)(2)(A)).

Based on these principles, as well as her review of the evidence presented at the hearing, the ALJ determined that Marigny suffered from "degenerative disc disease of the thoracic and lumbar spine, coronary artery disease, hepatitis C, hypertension, depression and anxiety disorder." (Tr. 12). Although she determined that Marigny's impairments were severe, the ALJ concluded that she did not "have an impairment or combination of impairments that meets or medically equals one of the listed impairments in" the applicable SSA regulations. (*Id.*). Further, the ALJ found that Marigny had the residual functional capacity ("RFC") to perform the full range of sedentary work, including her past work as a registration clerk. (Tr. 17). With those findings, the ALJ determined that Marigny "has not been under a disability, as defined in the Social Security Act, from August 28, 2005 through the date of this decision." (Tr. 14, 18). The ALJ then denied her application for benefits on July 24, 2008. (*Id.*).

On September 22, 2008, Plaintiff requested an Appeals Council Review of the ALJ's decision. (Tr. 6). The Appeals Council found no reason to amend the ALJ's decision, however, and denied Plaintiff's request on March 10, 2009. (Tr. 1). With that ruling, the ALJ's findings became final, and, on June 4, 2009, Marigny filed this suit, pursuant to section 205(g) of the Act (codified as amended at 42 U.S.C. § 405(g)), to challenge that decision. (Plaintiff's Complaint ["Complaint"], Docket Entry #1). After a review of the pleadings, the evidence presented, and the applicable law, it is **RECOMMENDED** that Plaintiff's motion be **GRANTED,** and that Defendant's motion be **DENIED.**

**STANDARD OF REVIEW**

Federal courts review the Commissioner's denial of disability benefits only to ascertain whether the final decision is supported by substantial evidence and whether the proper legal standards were applied. *See Newton*, 209 F.3d at 452 (citing *Dr. Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Id.* (citing *Martinez*, 64 F.3d at 173). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see Martinez*, 64 F.3d at 173 (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990)). On review, the court does not "reweigh the evidence, but . . . only scrutinize[s] the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *see Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). In making this determination, the court must weigh the following four factors: the objective medical facts; the diagnoses and opinions from treating physicians on subsidiary questions of fact; Plaintiff's own testimony about her pain; and Plaintiff's educational background, work history, and present age. *See Wren*, 925 F.2d at 126. If no credible evidentiary choices or medical findings exist that support the Commissioner's decision, then a finding of no substantial evidence is proper. *See Johnson*, 864 F.2d at 343.

**DISCUSSION**

In her motion, Plaintiff asks the court to reverse the Commissioner's decision to deny her disability benefits, and to render judgment in her favor. (Plaintiff's Motion p. 14).

Plaintiff argues, first, that the ALJ failed to consider "the side effects from the Plaintiff's multiple medications." (*Id*. p.4). Marigny claims, next, that the ALJ erred in determining that she could perform her previous work as a registration clerk. (*Id*.). Marigny argues further that the ALJ erred in failing to obtain a medical expert's opinion at the hearing. (*Id*. p.6). And Plaintiff complains that the ALJ failed to give controlling weight to the opinion of her treating physician, Dr. Stephen Rynick. (*Id*. p.10). Marigny also argues that the "ALJ erred in finding the Plaintiff's Type II Diabetes, rheumatoid arthritis, radiculopathy, leg pain, and panic attacks not to be severe." (*Id*. p. 12). Finally, Marigny urges the court to consider new medical evidence that was not available to the ALJ. (*Id*. p.13). Defendant insists, however, that "[s]ubstantial record evidence and relevant legal standards support the ALJ's decision that Plaintiff . . . was not disabled." (Defendant's Motion p.12).

### *Medical Facts, Opinions, and Diagnoses*

The earliest available medical records show that Marigny had an MRI performed on her lumbar spine on June 13, 2005. (Tr. 157). That MRI showed "[s]ignificant bulges with protrusions within the exiting left neural foramen, central canal stenosis, and bilateral neural foraminal stenosis at L3-4 and L4-5."[2] (*Id*.).

In September 2005, Marigny was twice examined by Dr. Muhammad Hanif, at Northwest Internal Medicine Specialists. (Tr. 171-174). She complained to him of back pain, joint stiffness, and limb pain, and she reportedly experienced "pain with range of motion in the back." (*Id*.). Marigny stated, however, that her pain was "better" with medication, and that her "[activities of daily living ("ADL's")] are not impacted by the

---

[2] "Stenosis" is an abnormal condition characterized y the constriction or narrowing of an opening or passageway in a body structure." MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 1539 (5th Ed. 1998).

pain." (Id.). Plaintiff was "[n]egative for anxiety, depression, and sleep disturbances," but Dr. Hanif noted that she appeared "stressed out." (*Id.*).

During a follow-up examination on October 3, 2005, Plaintiff complained of hip and joint pain. (Tr. 168-170). She described "the discomfort as moderate in severity," but her "[s]ymptoms [were] stable and nonprogressive." (*Id.*). She claimed, however, that standing aggravated her pain. (*Id.*). On October 12, 2005, Plaintiff complained of back pain, and joint stiffness. On examination, she experienced "pain with range of motion in the back." (Id.). Marigny again reported, however, that her "ADL's are not impacted by the pain." (Id.). She was said to be "[n]egative for anxiety, depression, and sleep disturbances," but, again, Dr. Hanif noted that Plaintiff appeared "stressed out." (*Id.*). He referred Marigny to Dr. Shan N. Siddiqi at the Texas Spine Center for pain management. (Id.).

On October 17, 2005, Dr. Siddiqi, examined Marigny, and recorded her complaints as follows:

> This 54-year-old lady who is currently off work, has moved from Louisiana after Hurricane Katrina. Previously she worked as a financial counselor for [a] hospital. She indicates that for several years she has had lumbar pain that has gotten progressively worse and for the last six months she has had progressively worsening bilateral leg pains. She denies any numbness, tingling, weakness, or bowel or bladder problems.

(Tr. 151).  D. Siddiqi's examination revealed "some tenderness in the lumbar region," and "[s]traight leg raising on the right side at about 50 degrees cause[d] some increased lumbar pain." Marigny had normal tone in her upper and lower extremities, and almost full strength in her lower extremities. (Id.). Dr. Siddiqi diagnosed Marigny as suffering from

lumbar pain, lumbar radiculopathy[3], lumbar herniated disc, and lumbar foraminal stenosis. (Id.).

Marigny visited Dr. Hanif for a follow-up examination on October 31, 2005. (Tr. 166-167). On that day, Plaintiff complained about back and limb pain, and joint stiffness, but, again, she reported that her "ADL's are not impacted by the pain." (Id.). During the examination, Marigny showed "no clubbing, cyanosis, or evidence of ischemia or infection; normal gait; grossly normal tone and muscle strength; full, painless range of motion of all major muscle groups and joints no laxity or subluxation of any joints; [and] no masses, effusions, misalignment, crepitus, or tenderness in major joints." (Id.). Plaintiff was "[n]egative for anxiety, depression, and sleep disturbances," and she was "alert and oriented," demonstrated "appropriate affect and demeanor," and "good insight and judgment." (Id.). Plaintiff's "recent and remote memory [were] intact." (Id.).

On November 14, 2005, Plaintiff returned to Dr. Siddiqi, who wrote that she "continues to have some lumbar and bilateral leg pain." (Tr. 150). The doctor "reviewed [an] MRI of the lumbar spine which shows lumbar foraminal and spinal stenosis at L3/4 and L4/5 with associated medial facet hypertrophy bilaterally and associated disc bulges." (Id.).

Dr. Hanif's records show follow-up examinations in December 2005, and January and February 2006, each with similar findings. (Tr. 162-165, 199-202). Marigny complained about back pain, joint stiffness, and limb pain," but reported that her "ADL's are not impacted by the pain." Dr. Hanif reported that Plaintiff was "[n]egative for anxiety, depression, and sleep disturbances." (Id.). In December 2005, however, without

---

[3] "Radiculopathy" refers to "a disease involving a spinal nerve root." MOSBY'S 1377.

explanation, Dr. Hanif also prescribed Zoloft to treat "depression." (Id.). Marigny was said to have a "normal gait," "grossly normal tone and muscle strength," and "full, painless range of motion of all major muscle groups and joints." She was "alert and oriented," demonstrated "appropriate affect and demeanor," and "good insight and judgment." (Id.). Dr. Hanif found Plaintiff's "recent and remote memory [to be] intact." (Id.).

On March 13, 2006, a state physician, Dr. Robin Rosenstock, completed a Physical Residual Functional Capacity Assessment on Marigny. (Tr. 179-186). Dr. Rosentock found that Marigny could lift fifty pound items occasionally, and twenty-five pound items frequently, and that she could stand or walk for about six hours during an eight-hour workday. (Id.). Dr. Rosentock reported that Marigny had an unlimited ability to push or pull, and exhibited no postural, manipulative, visual, communicative, or environmental limitations. (Id.). Dr. Rosentock concluded that Plaintiff's alleged "limitations are not wholly supported by evidence in file." (Id.).

On March 16, 2006, Marigny began mental health treatment with Carolyn Wynn at Family Services of Greater Houston. (Tr. 225). Marigny reported that she moved with her husband from New Orleans to Houston after they lost their home and belongings to Hurricane Katrina. (Id.). She stated that she felt sad, anxious, angry, "overwhelmed and displaced." (Id.). During a follow up session, on March 23, 2006, Plaintiff reported that her stress level aggravated her "back problem and pain." (Id.). On March 30, 2006, Ms. Wynn wrote that Plaintiff suffered from "chronic pain in her legs since last session," and that her "predominant emotion this week has been depression as the pain cannot be completely taken away by medication." (Id.).

Dr. Hanif examined Marigny, who complained of hypertension and rheumatoid arthritis, on April 3, 2006. (Tr. 196-198). Regarding Plaintiff's hypertension, Dr. Hanif noted that "[s]he has been experiencing possible adverse medication effects, including headache and nausea." (Id.). Marigny also reported moderate joint pain that Dr. Hanif described as "progressive and worsening." (Id.). After an examination one month later, Dr. Hanif reported the following regarding Marigny's complaints of back and leg pain:

> The location is primarily in the lumbar spine. The pain radiates to the left and right buttock and thighs. She characterizes it as intermittent, moderate in intensity, and aching. This is chronic problem, with essentially constant pain. She states that the current episode of pain started years ago. She does not recall any precipitating event or injury. She notes some pain relief with narcotic pain medication. The pain worsens with sitting for long periods of time and standing for long periods of time.

(Tr. 194-195).

After a follow-up session on May 10, 2006, Ms. Wynn reported that antidepressants had not alleviated Marigny's depression. (Tr. 225). Two weeks later, Ms. Wynn noted that Marigny's "[p]ain management [treatment] continues to restrict her activity and causes more depressive symptoms." (Id.). Plaintiff stated, however, that "relaxation techniques help at times." (Id.).

On June 23, 2006, Dr. Leela Reddy, another state physician, completed a Psychiatric Review Technique on Marigny. (Tr. 226-239). Dr. Reddy found that Marigny suffered from depression, an affective disorder, but that her condition was not severe. (Id.). On a scale of "None" to "Mild," "Moderate," "Marked," and "Extreme," Dr. Reddy determined that Plaintiff had mild "Restriction[s] of Activities of Daily Living"; mild "Difficulties in Maintaining Social Functioning"; and mild "Difficulties in Maintaining

Concentration, Persistence, or Pace." (Id.). Marigny's medical history revealed no "Episodes of Decompensation, Each of Extended Duration." (Id.). Dr. Reddy concluded that Marigny's "[a]lleged impairment[s] are not fully supported" by the available medical evidence. (Id.).

In April 2007, Marigny began treatment with Dr. Beverly Yount, a general practitioner. (Tr. 461). Marigny's primary complaint, during the year that she saw Dr. Yount, was hypertension. (Tr. 435-437, 444, 447, 450, 453, 456, 458, 461). In examinations during that year, Plaintiff reported instances of headaches, heightened cholesterol, and diarrehea. (*Id.*).

On May 4, 2007, Dr. Yount referred Marigny to Dr. Richard L. Meyer, an orthopaedic surgeon, who summarized his findings as follows:

> Physical exam revealed . . . pain localized to the lateral aspects of both hips and also some buttocks pain. Decreased lumbar range of motion was noted. Reflexes, motor testing, and sensation were normal in the lower extremities.

(Tr. 459). Dr. Meyer concluded that "[i]t is likely that the majority of her symptoms are arising from the lumbar spine," and he recommended physical therapy. (Id.).

Dr. Yount also referred Marigny for a examination by Dr. Stephen A. Rynick, at the Culicchia Neurological Clinic. (Tr. 415-416). During that examination, which took place on July 3, 2007, Dr. Rynick summarized Marigny's complaints as follows:

> [S]he ha[s] pain in the low back and gluteal region, extending down the posterolateral thigh to the posterolateral leg, down to the level of the ankle. The pain is worse with standing and walking. She is unable to stand more than five minutes without the pain becoming so severe that she has to sit or fall down. The pain, in general, is rated at 3/10 to 8/10. She does get some relief with sitting. She does not have any persistent motor or sensory loss in the lower extremities, that she is aware of. She has had no recent change in gait, bowel or bladder.

12

(Id.). Dr. Rynick then summarized his own findings:

> On physical exam, the patient is a well developed female in no acute distress. She is oriented, alert, and cooperative. Gait is normal. Straight leg raising is negative. Femoral stretch is negative. There is no focal motor or sensory deficit in the lower extremities. DTR's are 2+ and symmetric at the knees and ankles. There is tenderness in the lateral gluteal region bilaterally. Remainder of lumbosacral exam is benign.

(Id.). Dr. Rynick diagnosed Plaintiff as suffering from "[l]umbar spinal stenosis, primarily in the lateral recesses at L4-5, with bilateral L5 radiculitis." (Id.). Marigny elected to receive lumbar epidural steroid injections. (Id.). She received two of those injections in July 2007. (Tr. 417-418). At the end of the month, Dr. Rynick reported that her "low back and radicular pain to the lower extremities have resolved since those injections." (Tr. 420). However, Plaintiff "reported pain in the lower thoracic region, with pain radiating down right side." (Id.). Dr. Rynick found "no motor or sensory deficit in the lower extremities," and he noted that her gait and lumbar motion were normal. (Id.).

After a follow-up examination on August 17, 2007, Dr. Rynick again found "no focal motor or sensory deficit in the upper or lower extremities," and her gait was normal. (Tr. 419). Dr. Rynick diagnosed Plaintiff as suffering from thoracic radiculitis, and she agreed to recieve thoracic epidural steroid injections. (Id.). After the first two of those injections, in August and September 2007, Dr. Rynick reported that Marigny "has had complete relief of her back pain and thoracic radicular pain since her epidural steroid injections at T10/T11." (Tr. 421-423). However, he found that,

> . . . [h]er radicular pain to the lower extremity is consistent with L5 and has been increasingly bothersome especially with standing and walking, also with lifting. Symptoms are better when she is sitting or lying down. Pain

13

ranges from 0-7/10. She has not had any motor or sensory change in the lower extremities.

(Id.).

On October 31, 2007, Dr. Rynick examined Marigny, again, and reported as follows:

The patient has had complete relief of the radicular pain distal to her knees since titrating upward on the Lyrica. However, she has severe pain in the back extending to bilateral posterolateral thighs, consistent with L5 distribution. She is not having any motor or sensory loss. When she overdoes and the pain becomes severe, she tends to note her legs giving way.

(Tr. 424). Two weeks later, Dr. Rynick reported that,

. . . [t]he patient had a recent MRI of the lumbar spine secondary to her inadequate relief with medications and epidurals. At L3-4, previous bilateral laminectomy was noted. Mild broad based disc bulge is noted, with mild right and moderate left foraminal narrowing. L4-5 disc bulge, combined with severe bilateral facet hypertrophy, resulted in severe bilateral neural foraminal narrowing.

(Tr. 425). He noted that Marigny's "pain is unchanged, still inadequately relieved with medication," and that she "is limiting her activity increasingly." (Id.). Dr. Rynick referred Marigny to Dr. John C. Steck "for evaluation regarding possible surgical treatment options." (Id.).

On November 15, 2007, Dr. Steck reported that Plaintiff's "pain is increased with standing and walking and relieved with rest." He noted that "[o]n her exam she is neurologically intact [but] . . . has trouble standing and walking." (Tr. 426-427). Marigny discussed her surgical options with Dr. Steck, but there is no record of her decision. (Id.).

The final medical records show that, on January 10, 2008, Marigny was examined at the Touro Hospital emergency room in New Orleans, Louisiana. (Tr. 241-270). She

14

complained of chest pain, and was diagnosed as suffering from hypertension, anxiety, and smoking related disorders. (Tr. 243). However, she left the hospital, against medical advice, before seeing a cardiologist. (Id.). Four days later, she returned to Touro Hospital, with continued complaints of chest pain. (Tr. 271-322). She was diagnosed as suffering from unstable angina, medication was prescribed, and she was released. (Id.).

### Educational Background, Work History, and Present Age

At the time of the administrative hearing, Marigny was 56 years-old. (Tr. 41). She had a high school education, and was a Certified Administrative Assistant. (Id.). She had worked previously as "financial counselor," and as a registration clerk for a hospital. (Tr. 42).

### Subjective Complaints

At the hearing before the ALJ, on April 24, 2008,  Marigny testified that she suffered from pain in her lower back, hips, and legs, and that the back pain radiates down both legs causing them to become numb, so that she falls. (Tr. 44-46). She stated that she received no pain relief from surgery, physical therapy, or steroid injections. (Tr. 45).

Plaintiff stated that she previously worked in sedentary, office jobs, but that she could no longer perform those duties, because they required her to sit, as well as stand, and walk. (Tr. 43-44). She told the ALJ that she could sit for twenty minutes at a time without pain, and that she could stand for five minutes at a time without pain. (Id.). Marigny testified further that she could walk for half a block, and lift items weighing up to five pounds without pain. (Tr. 44).

Marigny testified that she does no housework or grocery shopping, and that she no longer drives a car. (Tr. 51-52). She told the ALJ that she can bathe and groom herself, but that her daughter helped her wash and comb her hair. (Id.). Marigny reported that, during a normal day, she prepares cereal in the morning, and then reads, watches TV, and rests. (Id.). Plaintiff rated her pain as a "nine" or "ten" on a scale of one–to–ten, but she reported that, with medication, the pain was between a "three" and a "six." (Id.). She did testify, however, that her medication caused her to feel "drowsy, sleepy, and tired," and that her ability to concentrate is "not good at all." (Tr. 52). Marigny reported that she suffers from depression, which causes her to experience five to ten crying spells a month. (Tr. 53). She also testified that she has experienced two periods in which she stayed in bed "most of the time." (Id.). At one point in the hearing, Marigny told the ALJ that she was taking medication for her depression, but later stated that she is not being treated for depression currently. (Tr. 53, 67).

### Expert Testimony

The ALJ also heard testimony from Herman Litt ("Mr. Litt"), a vocational expert witness. (Tr. 69). Mr. Litt testified that, under the Dictionary of Occupational Titles, Plaintiff's previous employment is classified as sedentary, semiskilled work, but that Marigny performed her duties at a light level of exertion. (Tr. 69). The ALJ asked Mr. Litt to consider "an individual who is 54 years of age, who has a high school plus education," the "ability to sit, 10 to 20 minutes at a time," the "ability to stand 10 to 20 minutes at a time," the "ability to walk five minutes at a time," the "ability to lift five pounds or less," and the ability to raise her arms over her head only occasionally. (Tr. 70-71). Mr. Litt told

the ALJ that such an individual would be able to perform Marigny's prior work as a registration clerk, at a sedentary level of exertion. (Id.). He testified further that an individual with the limitations described by the ALJ would be able to work as a credit card clerk, a claims clerk, and as a diet clerk. (Id.). Mr. Litt stated that 600 credit clerk jobs existed locally, and 130,000 were available nationally. (Id.). He also testified that there were 800 claims clerk positions available locally, and that 155,000 of those jobs were available nationally. (Id.). Mr Litt testified further that there were 1000 diet clerk jobs available locally, and another 210,000 of them available nationally. (Id.). The ALJ asked Mr. Litt whether Plaintiff had acquired any transferable skills, and he replied as follows:

> It would be a number of clerically related skills, Your Honor. Filing, using a computer for various clerical tasks. Doing general clerical work on a regular basis. Checking forms for completion, reviewing documents, doing reports. All those kinds of things would be transferable to other types of clerically related jobs, Your Honor.

(Tr. 74).

Marigny's attorney then questioned Mr. Litt. (Tr. 71). He asked him whether the ALJ's hypothetical worker would be able to perform the jobs he previously listed if her pace and concentration were moderately limited due to a "combination of pain, depression and side effects of medication." (Id.). Mr. Litt testified that such an individual would not be able to perform the jobs he previously listed, but that such a person could work as an optical goods worker, a sorter, or an order clerk. (Tr. 72). Finally, Marigny's attorney asked whether the hypothetical worker described would be capable of full-time employment if she required two, unscheduled fifteen minute breaks during a workday.

(Id.). Mr. Litt stated that the hypothetical worker, with the limitations described, would not be able to maintain full-time employment. (Id.).

### The ALJ's Decision

Following the hearing, the ALJ made written findings on the evidence. (Tr. 10-18). From her review of the record, she determined that Marigny suffered from "degenerative disc disease of the thoracic and lumbar spine, coronary artery disease, hepatitis C, hypertension, depression and anxiety disorder," and that those conditions were "severe." (Tr. 12). The ALJ next found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in the applicable SSA regulations. (Tr. 13). Finally, the ALJ determined that Marigny could perform the full-range of sedentary work, including her past relevant work as a registration clerk. (Tr. 14, 17). With those conclusions, the ALJ denied Marigny's application for disability insurance benefits. (Tr. 18). That denial prompted Marigny's request for judicial review.

Before this court, Plaintiff contends, first, that ALJ "failed even to discuss, much less consider, the side effects from Plaintiff's multiple medications on Plaintiff's ability to work." (Plaintiff's Motion p. 4). Marigny also argues that the ALJ "erred in not finding Plaintiff disabled under [the] Medical-Vocational Guideline[s]." (Id.). Plaintiff complains, as well, that the ALJ failed to obtain an updated opinion from a medical expert. (Id. p.6). Further, Marigny insists that the ALJ improperly rejected the medical opinions from Dr, Rynick, that she improperly relied on the testimony from the vocational expert witness, and that she erred in finding that several of Marigny's impairments were not "severe." (Id.

pp.9-13). Finally, Plaintiff urges the court to consider new medical records that were unavailable at the time of the hearing. (*Id*.). In response, Defendant argues that "[s]ubstantial record evidence and relevant legal standards support the ALJ's decision that Plaintiff . . . was not disabled." (Defendant's Motion p.12).

It is well settled that judicial review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence, and whether the ALJ applied the proper legal standards in making it. *See Myers*, 238 F.3d at 619; *Newton*, 209 F.3d at 452 (citing *Dr. Brown*, 192 F.3d at 496). Further, a finding of "no substantial evidence" is proper only if there are no credible medical findings or evidentiary choices that support the ALJ's decision. *See Johnson*, 864 F.2d at 343-44 (quoting *Hames*, 707 F.2d at 164).

*Side-effects from Medication*

Plaintiff complains that the ALJ did not consider the side effects of her medications. (Plaintiff's Motion p.4). This circuit has recognized that, "[u]nder the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate any pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1994) (citing 20 C.F.R. § 404.1529(c)(3)(iv)) (alterations in original). Side-effects from medication are deemed nonexertional limitations, "which may have a disabling effect" on a claimant. *See James v. Bowen*, 793 F.2d 702, 705 (5th Cir. 1986); *and see Crowley*, 197 F.3d at 199; *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). To establish whether such a disabling effect exists, an ALJ must consider the claimant's subjective complaints "about the intensity,

persistence, and limiting effects of [her] symptoms, and . . . will evaluate [her] statements in relation to the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4); *and see Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994) ("[T]he law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints."). Indeed, "[t]he Act, regulations and case law mandate that . . . subjective complaints be corroborated, at least in part, by objective medical findings." *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988). For this reason, an ALJ may reject a claimant's subjective complaints, so long as the reasons for so doing are made clear. *Falco*, 27 F.3d at 164.

Here, Plaintiff submitted a list of her medications prior to the hearing, and she explicitly cited drowsiness as a side effect of two of those medicines. (Tr. 54-55). She also testified that the medication she takes causes her to become "drowsy, sleepy, [and] tired." (Tr. 52). Further, in 2006, Dr. Hanif noted that Plaintiff "has been experiencing possible adverse medication effects, including headache and nausea." (Tr. 196-198). It seems clear that the effects of Marigny's medications merit at least some discussion by the ALJ. *See Crowley*, 197 F.3d at 199; 20 C.F.R. § 404.1529(c)(3)(iv). Because the absence of such a consideration may have prejudiced Plaintiff, this error requires that her case be remanded. *Id*. On remand, the ALJ should be directed to assess the side effects, if any, of Plaintiff's medications on her residual functional capacity. *Id*.

*Lack of Medical Expert Opinion*

Plaintiff alleges that the ALJ failed to develop the record because she did not "consult a medical expert regarding Plaintiff's" mental and physical RFC, and because the

ALJ did not "get an updated medical opinion as to the medical equivalency of Plaintiff's combined impairments." (Plaintiff's Motion pp.6-9). In determining whether a disability exists, an ALJ "owe[s] a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock*, 84 F.3d at 728. The Fifth Circuit has stated that it "will reverse the decision of an ALJ as not supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby." *Id.* To show prejudice, however, Plaintiff must establish that she "could and would have adduced evidence that might have altered the result." *Kane*, 731 F.2d at 1220.

Plaintiff maintains that a medical expert witness would have assisted the ALJ here, because this is a "medically complicated determination involving consideration of the cumulative physiological/psychological nexus between disparate medical conditions in determining Plaintiff's RFC." (Plaintiff's Motion p.7). She claims that the "last comprehensive medical review of the evidence occurred . . . nearly two years prior to the date of the ALJ hearing, and prior to the admission of 224 pages of medical records . . . constituting over two-thirds of the medical record of evidence. " (Plaintiff's Motion p.6).

In response, the Commissioner argues that the "state agency medical consultant determined . . . that Plaintiff's impairments did not equal the listings," and "signed SSA-831 forms, which is proof that physicians designated by the Commissioner considered the equivalency question." (Defendant's Response p.5). The Commissioner contends that, because "the ALJ determined that no additional evidence dated after 2006 . . . would disturb the state agency medical consultant's findings regarding equivalency," she "was

not required to consult a medical expert," and "whether to do so was within her discretion." (Id. p.6) (citing *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989)).

In making her argument, Marigny urges the court to rely upon *Brister v. Apfel* for the proposition that, "when additional medical evidence is received that in the opinion of the ALJ may change the State agency medical or psychological consultant's findings, an updated medical opinion regarding disability is required." (Plaintiff's Motion p.6) (citing *Brister v. Apfel*, 993 F. Supp. 574, 578 (S.D. Tex. 1998)). Here, Dr. Rosenstock, a State Agency medical consultant, reviewed Plaintiff's medical records, in March 2006, to assess her physical RFC. (Tr. 179-186). Then, in June 2006, Dr. Reddy, also a State Agency medical consultant, reviewed Plaintiff's medical records to assess her mental RFC. (Tr. 226-239). Plaintiff correctly points out that her medical records have not been reviewed by a medical expert, of any kind, since that review, almost two years before the hearing. (Plaintiff's Motion p.6). It is doubtful that the ALJ could fully appreciate the effects of Marigny's impairments, as detailed in subsequent medical records, without the assistance of a medical expert witness, or, at least, a consultant. In fact, the Fifth Circuit has warned expressly against such an attempt to interpret medical records:

> But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.

*Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990)). For that reason, the court must conclude that the ALJ's

decision in this case is not supported by substantial evidence, and Plaintiff's case should be remanded so that the record can be developed fully. (Id.).

*Hypothetical question to vocational expert witness*

Plaintiff complains that the ALJ could not rely on the testimony of the vocational expert witness because the hypothetical question posed to him included a flawed RFC. (Plaintiff's Motion at 9). Fifth Circuit rulings are emphatic that, to support a non-disability finding, any hypothetical question that is posed to a vocational expert witness must "incorporate reasonably all disabilities of the claimant [that are] recognized by the ALJ" and that are supported by the objective medical evidence. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *and see Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000); *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The court has already determined that, in the absence of a medical expert review of the record, or a discussion of the side-effects of Plaintiff's medications, the ALJ's RFC determination is not supported by substantial evidence. For that reason, she was not entitled to include that determination in her hypothetical to the vocational expert witness, or to rely on that witness' response. (*Id.*).

*Grid Rules*

Plaintiff complains that the "ALJ erred in not finding Plaintiff disabled under Medical-Vocational Guideline (Grid Rule) 201.14." (Plaintiff's Motion p.4). It is true that, at "the fifth step in the process, to determine whether a claimant is capable of performing other work or is disabled, the ALJ may use the Medical-Vocational Guidelines." *Watson v. Barnhart*, 288 F.3d 212, 216 (5th Cir. 2002). Here, however, the ALJ found, at step four of

the requisite analysis, that Marigny could perform her past relevant work, and so, was not disabled under the Act. (Tr. 17). The ALJ did not proceed to step five, and so, she did not err in failing to apply the grid rules to Plaintiff's claim. *See Watson*, 288 F.3d at 216.

> *Opinion from Treating Physician*

Plaintiff complains that the ALJ improperly rejected Dr. Rynick's medical opinion. (Plaintiff's Motion p.10). An ALJ cannot reject the opinion of a treating physician without "good cause" to do so.  *See* 20 C.F.R. § 404.1527(d); *Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Newton*, 209 F.3d at 455–56. Here, however, Plaintiff has not shown that the ALJ did, in fact, reject Dr. Rynick's medical opinion. In support of her argument, Marigny points only to Dr. Rynick's statement on July 3, 2007, that she could not stand for longer than five minutes. (Tr. 415-416). However, it is clear that his statement was not a reflection of the doctor's medical opinion, but rather a recitation of Plaintiff's subjective complaints. (Id.). Indeed, later in his medical records, Dr. Rynick reports his opinions based on his own examination of Plaintiff. (Id.). Plaintiff presents no basis for reversal on this issue. *See* 20 C.F.R. § 404.1527(d).

Marigny also contends that, if the ALJ believed that Dr. Rynick's opinion was "insufficiently supported by treating notes," then she should have sought a "more detailed report" from the doctor. (Plaintiff's Motion p.10). The Fifth Circuit has held that "if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, *absent other medical opinion evidence based on personal examination or treatment of the claimant*, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. §

404.1512(e)." *Newton*, 209 F.3d at 453 (emphasis added); *see also* 20 C.F.R. § 404.1527(c)(3) ("we will try to obtain additional evidence under the provisions of § 404.1512" only if "we do not have sufficient evidence to decide whether you are disabled"). The record here contains "personal examination or treatment records" from Drs. Hanif, Siddiqi, Meyer, Steck, and Yount. Under Fifth Circuit precedent, then, the ALJ was not required to seek additional evidence from Dr. Rynick. *See Newton*, 209 F.3d at 453. Further, the failure to request additional information from a treating or examining source is reversible error only if that failure proves prejudicial to the claimant. *Id*. The claimant must establish prejudice by showing that, if the ALJ had developed the record, additional evidence would have been produced that might have led to a different decision. *Id*. Here, Marigny has pointed to no additional evidence, which Dr. Rynick could have produced, that might have led to a different decision. In the absence of a showing of prejudice, the ALJ did not err in failing to contact Dr. Rynick. *Id*.

*Severity of Plaintiff's Impairments*

The ALJ found that Plaintiff suffered from "degenerative disc disease of the thoracic and lumbar spine, coronary artery disease, hepatitis C, hypertension, depression and anxiety disorder," and that those impairments were "severe" under the Act. (Tr. 12). Marigny contends that the ALJ also should have found that "Plaintiff's Type II Diabetes, rheumatoid arthritis, radiculopathy, leg pain, and panic attacks" were "severe" impairments. (Plaintiff's Motion p.12). Plaintiff argues that "[t]o assert that the impact of [those impairments] . . . impose no more than a minimal effect on Plaintiff's ability to work is to defy the clear evidence of the record." (*Id*.). "What [Marigny] overlooks,

however, is that having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations." *Shipley v. Sec. of Health and Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987) (per curiam); *see also Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Vail v. Astrue*, 2009 WL 4877121, *8 (S.D.Tex. Dec 11, 2009)(Atlas, J.)(holding that the claimant's "argument regarding the severity of certain additional impairments is irrelevant because the ALJ's determination was not based on a conclusion that her impairment was not severe (step two), but rather on his conclusion that she had the RFC to perform her past relevant work (step four)")(citing *Shipley*, 812 F.2d at 935). Because the ALJ determined, even in light of the physical and mental limitations documented in the medical record, that Plaintiff could perform her past work as a registration clerk, it is irrelevant that some of Marigny's impairments were not considered to be "severe" under the Act. *Id*.

   *New Evidence*

   Finally, Plaintiff submitted additional evidence to the Appeals Council after the ALJ's decision was rendered. (Tr. 435-464). Marigny argues that this evidence would likely alter the ALJ's decision, and so, it should be considered by the court. The district court is required to consider and address new evidence that is submitted to the Appeals Council, but only if such evidence is "material, and there is "good cause" for the failure to present it earlier. *Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). Here, the new evidence includes the treatment records from Dr. Yount, dated from April 2007, to March 2008. (Tr. 435-437, 444, 447, 450, 453, 456, 458, 461). Those records, concerning ten examinations, show only that Marigny was treated for hypertension, headaches, and

heightened cholesterol. (*Id*.). The new evidence also includes the examination by Dr. Meyer, dated May 2007. (Tr. 459). That examination "revealed . . . pain localized to the lateral aspects of both hips and also some buttocks pain. Decreased lumbar range of motion was noted. Reflexes, motor testing, and sensation were normal in the lower extremities." (Id.). Dr. Meyer concluded that "[i]t is likely that the majority of her symptoms are arising from the lumbar spine," and he recommended physical therapy. (Id.). Although this evidence is relevant to Plaintiff's claim, the court is persuaded that none of these examinations conflicts with the ALJ's decision. First, Dr. Yount's records do not describe any functional limitations. Second, Dr. Meyer's records revealed a decreased range of motion in the lumbar spine, but they do not specify to what degree she was limited. Finally, the ALJ's RFC determination already limits Plaintiff to sedentary work, the lowest level of physical exertion. Because the additional evidence that Plaintiff presents would no likely alter the ALJ's decision, it does not provide a basis for a remand. *Newton*, 209 F.3d 448.

**CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion be **GRANTED**, and that Defendant's motion be **DENIED**. This matter should be remanded, under sentence four of 42 U.S.C. 405(g), so that Plaintiff's RFC can be considered in light of an updated medical expert opinion, and with consideration of the side-effects, if any, from Plaintiff's medications. Remand will allow the ALJ to render a decision that is supported by substantial evidence.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 24th day of August, 2010.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**